UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICARDO SANTIAGO, on his own behalf, and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOTAL LIFE CHANGES LLC and "JOHN DOES 1-5", fictitious name used to identify presently unknown entities,<br><br>Defendants. | Civil Action No.:<br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Ricardo Santiago ("Plaintiff" or "Santiago"), acting on behalf of himself and all others similarly situated ("Class Members") brings this action for damages and equitable relief against Total Life Changes, LLC ("Defendant" or "TLC").

## PRELIMINARY STATEMENT

1.      Plaintiff Ricardo Santiago commences this action on behalf of himself and all other individuals who have purchased the IASO TEA INSTANT with Broad-Spectrum Hemp Extract 0.0% THC tea product (hereinafter referred to as "ITI BSH Tea") from the Defendant or any other third-party company, dealer, and/or purveyor.

2.      Plaintiff seeks compensatory, consequential, liquidated, statutory, and punitive damages against the Defendants on behalf of himself and all others similarly situated, together with all other appropriate relief provided by state, federal and common law.

3.      Plaintiff brings this action on behalf of himself and all other individuals who purchased the ITI BSH Tea product as said tea contains THC, despite the clear labeling that it

1

purportedly contains 0.0% THC, the express warranty on its packaging indicating that said tea has been tested at a laboratory and that said laboratory results indicated that the tea contains 0.0% THC, and that the laboratory results posted on Defendant's website which supports its 0.0% THC contention.

4.      This is a clear violation of federal, state, and common law and as such, Plaintiff, along with all others similarly situated, are entitled to monetary damages.

## PARTIES

5.      At all times hereinafter mentioned, Plaintiff **RICARDO SANTIAGO** (hereinafter referred to as "Santiago"), is a resident of the State of New Jersey, County of Hudson.

6.      Upon information and belief, Defendant **TOTAL LIFE CHANGES LLC** (hereinafter referred to as "TLC"), is a foreign limited liability corporation organized and existing by virtue of the laws of the State of Michigan and is authorized to transact business in each and every State in the United States of America, including the State of New Jersey, with its principal place of business located in Fair Haven, Michigan.  The Defendant also has an office in Monterrey Park, California.

7.      Upon information and belief, Defendants "JOHN DOES 1-5" are business entities authorized to transact business in each and every State in the United States of America and are sellers, distributors, and/or purveyors of the ITI BSH Tea.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction as the Complaint raises a federal claim.  This Court also has jurisdiction over each and every claim asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), since members of the putative class reside in states across the Country, including, but not limited to, New Jersey; Defendants are entities incorporated within the States of Michigan; there are more than 100 putative class members; and the amount in controversy exceeds

$5,000,000.00, exclusive of interests and costs.

9.      Further, this Court has personal jurisdiction over Defendants because the Defendants purposefully availed themselves of the State of New Jersey by placing its products, namely, the ITI BSH Tea, in the stream of commerce and by marketing and selling all of its products in the State of New Jersey and/or by having such contacts with New Jersey as to render the Court's exercising of jurisdiction over the Defendants consistent with the traditional notions of fair play and substantial justice. Named Plaintiff purchased the ITI BSH Tea while in New Jersey.

10.      Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because the Plaintiff and putative class members reside in the geographic location within the District of New Jersey (Newark Division), the defendants operate and advertise their business in the geographic location within the District of New Jersey (Newark Division), and a substantial part of the events or omissions giving rise to the claims occurred in the District of New Jersey (Newark Division).

## CLASS ACTION ALLEGATIONS

11.      Plaintiff has commenced this action as a class action on behalf of all individuals who have purchased the ITI BSH Tea anywhere throughout the United States of America.

12.      **Ascertainable class**:   The proposed Class is ascertainable in that its members can be identified and located using information contained in Defendants' records kept in the ordinary course of their business, specifically customer information such as invoices, receipts, and any and all databases which contain personally identifiable customer information which includes names, addresses, and telephone numbers.  The members can also be identified by the records of customer information kept in the ordinary course of business of the Defendants' representatives, distributors, and third parties who sold ITI BSH Tea.

13.     **Numerosity**:   The potential number of persons in the Class is so numerous that joinder of all members would be unfeasible and impractical. The disposition of their claims through this class action will benefit both the parties and this Court. The number of persons in this Class is unknown to Plaintiffs at this time; however, it is estimated that the number far exceeds one hundred (100) individuals.

14.     **Typicality**:   Plaintiffs' claims are typical of the claims of all of the other members of the Class because all of the plaintiffs sustained similar injuries and damages arising out of Defendants' common cause or course of conduct in violation of Common law and Federal laws and regulations and the injuries and damages of all other members of the Class were caused by Defendants' wrongful conduct as described in this Complaint.

15.     **Adequacy**:   Plaintiff Santiago is an adequate representative of the Class; will fairly protect the interests of the other members of the Class; has no interest(s) antagonistic to the members of the Class; and will vigorously pursue this suit through his attorneys who are competent, skilled and experienced in litigating matters of this type. There will be no difficulty in the management of this action as a class action.

16.     **Superiority**:   The nature of this action makes the use of the class action vehicle a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the other members of the Class for the wrongs alleged herein, as follows:

    a.  This case involves a large corporate Defendant and potentially other large corporate entities and Plaintiffs are a significant number of individuals with many relatively small claims and common issues of law and fact;

    b.  If each individual member of the Class was required to file an individual lawsuit, Defendant would necessarily gain an unconscionable advantage because, with its vastly superior financial and legal resources, it would be able to exploit and overwhelm the limited resources of each individual member of the Class;

4

    c.   Requiring each individual member of the Class to pursue an individual remedy would also discourage the assertion of lawful claims by members of the Class who would be disinclined to pursue an action against Defendants due in part to cost of having to file said action and retain competent counsel;

    d.   The Prosecution of separate actions by the individual members of the Class, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual members of the Class against Defendants; would establish potentially incompatible standards of conduct for Defendants, would result in legal determinations with respect to individual members of the Class which would, as a practical matter, be dispositive of the interest of the other members of the Class who are not parties to the adjudications; and/or would substantially impair or impede the ability of the members of the Class to protect their own interests;

    e.   The claims of the individual members of the Class may not be sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses thereto;

    f.   Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or even impossible for individual member of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action; and

    g.   The costs to the court system of adjudication of such individualized litigation would be substantial.

17. **Existence of Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to members of the Class which predominate over questions affecting only individual members of the Class, including, but not limited to, the following:

**Common Questions of Fact and Law regarding Defendant's False Advertising, Mislabeling, and General Conduct Under the Attendant Circumstances**

    a.   Whether TLC's statement on its ITI BSH Tea packaging is accurate in that the product therein contains 0.0% THC when in fact, it does contain greater than 0.0% THC;

    b.   Whether TLC's statement on its ITI BSH Tea packaging is intentionally misleading the general public and/or consumers of said product in stating that the product therein was tested by a facility which indicated that the product contains 0.0% THC when in fact, it does contain greater than 0.0% THC;

**Additional Questions of Fact and Law regarding TLC's Conduct:**

      a.   Whether Defendants are liable for attorneys' fees and costs associated with this litigation.

18.     Plaintiffs intend to send notice to all members of the Class to the extent required by applicable law.

## STATEMENT OF FACTS

19.     Defendant is a multi-level marketing company.

20.     The Defendant sells its products directly through its website, through third-party distributors such as Amazon.com, and through its representatives that they have called "life changers".

21.     In or around the summer or fall of 2020, Plaintiff was considering purchasing a detox tea.  Plaintiff came into contact with salesperson Perla Valdez, who indicated to him that he should purchase the IASO TEA INSTANT with Broad-Spectrum Hemp Extract 0.0% THC tea product.

22.     Ms. Valdez provided Plaintiff with a link to her special section of the website so as to permit her to obtain a commission from Defendant TLC for having sold to Plaintiff the ISI BSH Tea Product.  Said link is https://retail.totallifechanges.com/Pmvaldez.  Plaintiff purchased the ISI BSH Tea Product through the aforementioned link.

23.     A picture of the packaging of the ISI BSH Tea Product is below:





24.     The front of the packaging, in pertinent part, clearly reads as follows:

IASO TEA INSTANT WITH BROAD-SPECTRUM HEMP EXTRACT 0.0% THC

25.     The back of the packaging, in pertinent part, clearly reads as follows:

This proprietary formula is powered by 100mg of organic Broad-Spectrum Hemp Extract with 9% laboratory certified THC content […].

Total Life Changes, LLC Iaso Instant Tea utilizes a Broad-Spectrum Hemp Extract which contains 0.0% total THC as evidenced through independent laboratory tests.

26.     Plaintiff relied on the representation on the front and back of the packaging of the ISI BSH Tea Product when purchasing the product.

27.     In addition, because Plaintiff is presently a Parolee in New Jersey and he knew that had he ingested any THC products and tested positive for THC that this would have been in violation of the terms and conditions of his parole thereby potentially subjecting Plaintiff to jail and/or prison time despite his otherwise good behavior.

28.     Plaintiff ultimately ingested the ISI BSH Tea Product which, unknowingly to Plaintiff, contained THC.

29.     Plaintiff appeared for a regularly scheduled parole appointment where he submitted to a urine sample test.  Said sample was tested and came back positive for THC.

30.     The positive test was extremely shocking to Plaintiff considering he had not knowingly ingested any THC products as he knew that he would be subject to incarceration for a violation of his parole.  Plaintiff pled with his parole officer that he had not knowingly ingested THC products and informed her that he had recently purchased the ISI BSH Tea Product which indicated on its exterior packaging in multiple different sections that the product therein contained 0.0% THC and that said 0.0% THC was confirmed by laboratory testing.  Plaintiff believed that,

despite the express warranties on the packaging of the tea, that the tea may have been the source of the THC and what caused him to fail his drug test.

31.     As Plaintiff had previously recommended to his parole officer that she also should start using the tea product, Plaintiff was given a period of time to confirm his suspicions without penalty.

32.     Next, Plaintiff took a few of the individual tea packets from the same larger package of tea and mailed it for laboratory testing to the IEH Laboratories & Consulting Group testing facility in Secaucus, New Jersey.   IEH conducted testing on said samples of tea to determine whether or not the samples contained THC and/or THCA.

33.     Soon thereafter, Plaintiff received the test results which indicated that the samples of tea contained THC, to wit, 700 ppm (parts per million).  A copy of the test results are below:



### CERTIFICATE OF ANALYSIS
Ricardo Santiago, Est.RS
81 3rd Ave
Secaucus, NJ 07094
Phone:(347) 415-6877

IEH Laboratories & Consulting Group
IEH Analytical Laboratories
3927 Aurora Avenue North
Seattle, WA 98103
Phone:(206) 632-2715 Fax:(206) 632-2417
www.iehinc.com

TRADE SECRET / CONFIDENTIAL COMMERCIAL INFORMATION

| WO: 1718325 | | Samples Received: 10/26/2020   Report Date: 11/2/2020 | | Report No: IAL-19463 |
|---|---|---|---|---|
| Lab Sample ID | Client Sample ID | Analysis Date | THC (ppm) | THCA (ppm) |
| 1718325-55649 | Total Life Change Iaso Tea | 11/2/2020 | 700 | <5.0 |

Test Method: THC = Delta-9-tetrahydrocannabinol by HPLC-DAD, THCA = Delta-9-tetrahydrocannabinolic acid by HPLC-DAD

34.     Plaintiff reported this information to his parole officer who then spoke with her supervisor who indicated that Plaintiff's positive test for THC would not be considered a violation of his parole as the THC content in Plaintiff's urine sample did not meet the standard for it to be correlated to Plaintiff having swallowed or inhaled THC.

35.     Plaintiff then retained Richman Law Firm PLLC and counsel thereat also conducted an investigation and sent a sample from a different packet of ISI BSH Tea Product to Anresco

Laboratories, a laboratory in California to have the same testing conducted at said laboratory as was done at IEH.  Said testing resulted in a positive finding of THC, to wit, 800 ppm (parts per million).  A copy of the pertinent portion of the test results are below:

**ANALYTICAL RESULTS**

| Analysis | Cannabinoid Profile (LC-DAD) |
|---|---|
| Instrument | Liquid Chromatography Diode Array Detector (LC-DAD) |
| Method | MF12D012 |
| Analysis Date | November 11, 2020 to November 13, 2020 |

| Cannabinoid | mg/g | % | mg/serving | mg/package | Status |
|---|---|---|---|---|---|
| Δ8-THC | ND | ND | ND | ND | - |
| Δ9-THC | <LOQ (0.008) | <LOQ (0.0008) | <LOQ (0.037) | <LOQ (0.92) | - |

36.     Despite the exterior packaging of the subject tea specifically indicating that the product inside contains 0.0% THC, this is an absolute fallacy as two (2) of the above tests indicated that said tea contains THC.  As such, this lawsuit ensues.

## AS AND FOR A FIRST CAUSE OF ACTION
## Magnuson Moss Warranty Act ("Act"), 15 U.S.C. §§ 2301 *et seq.*

37.     Plaintiff, on behalf of himself and the Class Members, repeat and reallege the allegations set forth *supra* as if set forth fully herein.

38.     The ITI BSH tea product is a "consumer product" within the definition of the Act  The ITI BSH tea product was distributed in commerce and is normally used for personal, family, or household purposes.

39.     Plaintiff and the Class Members are "consumers" within the definition of the Act.

40.     Defendants are "suppliers" within the definition of the Act.  Defendants were engaged in the business of making the ITI BSH tea product directly or indirectly available to Plaintiff and the Class Members.

41.     Defendants marketed, sold, and/or distributed IASO TEA INSTANT with Broad-Spectrum Hemp Extract 0.0% THC tea product and Plaintiffs and Class Members purchased the ITI BSH tea product.

42.     Defendants represented in their marketing, advertising, and promotion of the ITI BSH tea product that their product contained 0.0% THC.  Defendants further represented that the ITI BSH tea product was independently tested in a laboratory and found to have 0.0% THC.  Defendants made these representations to induce Plaintiffs and Class Members to purchase the ITI BSH tea product.

43.     Defendants' representations that the ITI BSH tea product contained 0.0% THC became part of the basis of the bargain between Defendants and Plaintiff and other Class Members.

44.     Consumers, like Plaintiffs and Class Members, base their purchasing decision on the affirmations that the Defendants made about the ingredients contained in the product.

45.     The ITI BSH tea products did not conform to the Defendants' representations or warranties regarding "0.0% THC" because at all relevant times the bags of the ITI BSH tea product contained greater than 0.0% THC.

46.     As a direct and proximate result of Defendants' breaches of their express warranties and their failure to conform to the ITI BSH tea product label's express representations, Plaintiff and members of the Class have been damaged.  Plaintiff and Class Members have suffered damages in that they did not receive the product that they specifically paid for and that Defendants warranted that it would be.  In addition, Plaintiff and Class Members paid a premium for the product, sometimes upwards of approximately $70.00, that did not conform to the Defendants' warranties.  Plaintiff and Class Members also unwittingly ingested THC as a result of the Defendants' misrepresentation.  Plaintiff and Class Members are entitled to compensatory

damages, including but not limited to, in the least, a refund of the purchase price, and are also entitled to attorneys' fees and costs associated with the pursuit of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### Magnuson Moss Warranty Act ("Act"), 15 U.S.C. §§ 2301 *et seq.*

47.     Plaintiff, on behalf of himself and the Class Members, repeat and reallege the allegations set forth *supra* as if set forth fully herein.

48.     Plaintiff and the Class Members are consumers under the Act.

49.     Defendants are suppliers under the Act.  They marketed, sold, and/or distributed the ITI BSH tea product.

50.     Plaintiffs and other Class Members purchased the ITI BSH tea product, a consumer product under the Act.

51.     Plaintiff brings this claim for breach of an implied warranty on behalf of himself and other Class Members.  An "implied warranty" is defined under the Act, as an implied warranty under State law in connection with the sale by a supplier of a consumer product.

52.     The Defendants have breached their implied warranties, such as the implied warranties of merchantability and fitness of a particular purpose, that they made to Plaintiffs and the prospective class.  Defendants impliedly warranted that the ITI BSH tea product was free from defects, that they were merchantable, and that they were fit for the ordinary purpose for which these kinds of tea products are used.

53.     When sold by Defendants, the ITI BSH tea product was not merchantable.  The ITI BSH tea product was not fit for the ordinary purposes for which such goods are used.  The ITI BSH tea product also did not conform with the promises and affirmations made on the label because it was not a 0.0% THC product as it contains greater than 0.0% THC.

54.     The ITI BSH tea product was also not fit for the particular purpose.  Reasonable buyers such as Plaintiff and the Class Members purchased the product with the assumption that the ITI BSH tea product would work as a "detox tea" and that it contained 0.0% THC when in fact it contained THC, which is an intoxicant.

55.     As a direct result of the ITI BSH tea product being unfit for its particular purpose and/or not merchantable, Plaintiff and the Class Members were damaged and are entitled to remedies.

56.     Because of the defects in the ITI BSH tea product as described herein, the value of the ITI BSH tea product as warranted is greater than the actual value of the ITI BSH tea product. Plaintiff and the Class Members would not have purchased the ITI BSH tea product on the same terms, or purchased the product at all, had they known that the ITI BSH tea product in fact contained THC.   Plaintiffs paid a price premium for this tea based on Defendants' misrepresentations.

57.     As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff and the other class members have been damaged in an amount to be proven at trial.   Plaintiff and Class Members are entitled to compensatory, incidental, and consequential damages, along with attorneys' fees and costs associated with the pursuit of this action.

**AS AND FOR A THIRD CAUSE OF ACTION**
**<u>Breach of Express Warranty</u>**

58.     Plaintiff, on behalf of himself and the Class Members, repeat and reallege the allegations set forth *supra* as if set forth fully herein.

59.     Defendants marketed, sold, and/or distributed IASO TEA INSTANT with Broad-Spectrum Hemp Extract 0.0% THC tea product and Plaintiffs and Class Members purchased the ITI BSH tea product.

60.     Defendants represented in their marketing, advertising, and promotion of the ITI BSH tea product that their product contained 0.0% THC.  Defendants made these representations to induce Plaintiffs and Class Members to purchase the ITI BSH tea product and did in fact induce Plaintiffs and Class Members to purchase this product.

61.     To further support its promise that the product contained 0.0% THC, the Defendants stated on the back of the packaging that their product was tested in an independent laboratory and found to have 0.0% THC.

62.     Consumers, like Plaintiff and Class Members, based their purchasing decision on the affirmations that the Defendants made about the ingredients contained in the product especially considering that the Plaintiff and Class Members were seeking certain benefits from ingesting the "detox" tea which they otherwise would not be seeking in their purchase of other consumer goods.

63.     Accordingly, Defendants' representations that the ITI BSH tea product contained 0.0% THC became part of the basis of the bargain between Defendants and Plaintiff and other Class Members.

64.     The ITI BSH tea products did not conform to the Defendants' promise or description regarding "0.0% THC" because at all relevant times the bags of the ITI BSH tea product contained greater than 0.0% THC.

65.     As a direct and proximate result of Defendants' breaches of their express warranties and their failure to conform to the ITI BSH tea product's express representations, Plaintiff and members of the Class have been damaged.  Plaintiff and Class Members have suffered damages

in that they did not receive the product that they specifically paid for and that Defendants warranted that it would be.  In addition, Plaintiff and Class Members paid a premium for a product, sometimes upwards of approximately $70.00, that did not conform to the Defendants' warranties.  Plaintiff also unwittingly ingested THC as a result of the Defendants' misrepresentation.  Plaintiffs are entitled to compensatory, incidental, and consequential damages that resulted from the Defendants' breaches of their express warranties.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**<u>Breach of Implied Warranty of Merchantability</u>**

66.     Plaintiff, on behalf of himself and the Class Members, repeat and reallege the allegations set forth *supra* as if set forth fully herein.

67.     Defendants marketed, sold, and/or distributed the ITI BSH tea product, and Plaintiffs and other Class Members purchased the ITI BSH tea product.

68.     Plaintiff brings this claim for breach of the Uniform Commercial Code and various state laws' implied warranty of merchantability on behalf of himself and other consumers who purchased the ITI BSH tea product.

69.     The Defendants are merchants as defined by applicable UCC provisions.

70.     The Defendants have breached the implied warranties of merchantability that they made to Plaintiffs and the prospective class.  For example, Defendants impliedly warranted that the ITI BSH tea product was free from defects, that they were merchantable, that they were fit for the ordinary purpose for which these kinds of tea products are used, and that the ITI BSH tea product conformed with the affirmations made on the label.

71.     When sold by Defendants, the ITI BSH tea product was not merchantable, did not conform with the promises and affirmations made on the label, was not a 0.0% THC product as it

15

contains greater than 0.0% THC, were not of adequate quality within that description, were not fit for the ordinary purposed for which such goods are used, and did not conform to the promises or affirmations of fact made on the container, packaging, or label.

72.    As a direct result of the ITI BSH tea product being unfit for its intended purpose as a 0.0% THC product and/or otherwise not merchantable, Plaintiff and other class members were damaged are entitled to remedies.

73.    Because of the defects in the ITI BSH tea product as described herein, the value of the ITI BSH tea product as warranted is greater than the actual value of the ITI BSH tea product. Plaintiff and the Class Members would not have purchased the ITI BSH tea product on the same terms, had they known that the ITI BSH tea product in fact contained THC.  Plaintiffs paid a price premium for this tea based on Defendants' misrepresentations.  Damages, which may be measured pursuant to the damages provisions of Article 2 of the UCC, are warranted to Plaintiff and Class Members.

74.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff and the other class members have been damaged in an amount to be proven at trial.  Plaintiff and Class Members are also entitled to attorneys' fees and costs associated with the pursuit of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION
## Breach of Implied Warranty of Fitness for a Particular Purpose

75.    Plaintiff, on behalf of himself and the Class Members, repeat and reallege the allegations set forth *supra* as if set forth fully herein.

76.    Defendants marketed, sold, and/or distributed the ITI BSH tea product, and Plaintiffs and other Class Members purchased the ITI BSH tea product.

77.     Plaintiff brings this claim for breach of the Uniform Commercial Code and various state laws' implied warranty of fitness for particular purpose on behalf of himself and other Class Members who purchased the ITI BSH tea product as a non-THC tea product.

78.     The Defendants are merchants as defined by applicable UCC provisions.

79.     The Defendants have breached the implied warranties of fitness for particular purpose that they made to Plaintiffs and the prospective class.  Defendants, through their own marketing and website, through their distributors, and through their representatives, offered the ITI BSH tea product as a detox tea.

80.     When sold by Defendants, the ITI BSH tea product was not fit for this particular purpose because it was not a "detox tea," and that it contained 0.0% THC when in fact it contained THC, which is an intoxicant

81.     As a direct result of the ITI BSH tea product being unfit for its intended purpose as a 0.0% THC product, Plaintiff and other class members were damaged and are entitled to remedies.

82.     Because of the defects in the ITI BSH tea product as described herein, the value of the ITI BSH tea product as warranted is greater than the actual value of the ITI BSH tea product. Plaintiff and the Class Members would not have purchased the ITI BSH tea product on the same terms, or purchased the ITI BSH Tea at all, had they known that the ITI BSH tea product in fact contained THC.   Plaintiffs paid a price premium for this tea based on Defendants' misrepresentations.  Damages, which may be measured pursuant to the damages provisions of Article 2 of the UCC, are entitled to be given to Plaintiff and Class Members.

83.     As a direct and proximate result of Defendants' breach of the warranties of fitness for a particular purpose, Plaintiff and the other class members have been damaged in an amount to be proven at trial.  Plaintiff and Class Members are entitled to compensatory, incidental, and

consequential damages, and are also entitled to attorneys' fees and costs associated with the pursuit of this action.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**Unjust Enrichment**

84.     Plaintiff, on behalf of himself and the Class Members, repeat and reallege the allegations set forth *supra* as if set forth fully herein.

85.     Plaintiff and Class Members conferred benefits on Defendants by purchasing the ITI BSH tea product at a premium price.

86.     Defendants had knowledge of their receipt of such benefits.

87.     Defendants have been unjustly enriched in retaining revenues derived from Plaintiff and Class Members' purchases of the ITI BSH tea product.

88.     Defendants' retaining these moneys under these circumstances is unjust and inequitable because Defendants falsely and misleadingly represented that the ITI BSH tea product contains 0.0% THC when, in fact, the ITI BSH tea product contains greater than 0.0% THC.

89.     Defendants' misrepresentations have injured Plaintiff and Class Members because they would not have purchased (or would not have paid a premium price) for the ITI BSH tea product had they known the true facts regarding the ITI BSH tea product's ingredients.

90.     Because it is unjust and inequitable for Defendants to retain such non-gratuitous benefits conferred on them by Plaintiff and Class Members, Defendants must pay restitution to Plaintiffs and Class Members, as ordered by the Court.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**Deceptive Trade Practices**

91.     Plaintiff, on behalf of himself and the Class Members, repeat and reallege the allegations set forth *supra* as if set forth fully herein.

92.     The ITI BSH tea product is a merchandise regulated by consumer protection acts and laws against deceptive trade practices.

93.     Defendants are prohibited from using any unconscionable commercial practice, deception, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise.

94.     Defendants engaged in deceptive trade practices by marketing, advertising, and promoting its product as containing 0.0% THC, when in fact the product contained greater than 0.0% THC.

95.     Defendants intended for consumers such as the Plaintiff and Class Members to rely on this deceptive trade practice to purchase the product.

96.     Defendants proximately caused Plaintiff and other Class Members to suffer an ascertainable loss in the form of monies spent to purchase deceptively labeled merchandise.

97.     Plaintiff and Class Members are entitled to recover restitution, punitive damages, attorneys' fees and costs, and other damages as ordered by the Court.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### Negligent Misrepresentation

98.     Plaintiff, on behalf of himself and the Class Members, repeat and reallege the allegations set forth *supra* as if set forth fully herein.

99.     Defendants made an incorrect statement about the concentration of THC in the ITI BSH tea product by stating that the ITI BSH tea product contained 0.0% THC when in fact the product had a concentration of THC that was greater than 0.0% THC.  Defendants also made an incorrect statement by representing that independent laboratory tests had confirmed that the ITI BSH tea product had 0.0% THC.

100.    Defendants were negligent in their misrepresentations.  The ITI BSH tea product had a higher concentration of THC than 0.0%.  Furthermore, two (2) independent laboratory tests, one by IEH Laboratories & Consulting Group in New Jersey, the other by Anresco Laboratories in California, were performed on the ITI BSH tea product which all showed that the product contained greater than 0.0% THC.

101.    Plaintiff and Class Members relied on the Defendants' representations in purchasing the ITI BSH tea product.

102.    Defendants' negligent misrepresentations proximately caused Plaintiff and other Class Members to suffer an ascertainable loss in form of monies spent to purchase the ITI BSH tea product.

103.    Plaintiff and Class Members are entitled to recover restitution, other economic losses, and injury sustained as a result of their justifiable reliance on Defendants' negligent misrepresentations.

## JURY DEMAND

104.    Plaintiff, on behalf of himself and the proposed class, hereby demands a trial by jury of all claims alleged herein.

## REQUEST AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff individually and on behalf of the proposed class, request relief against the Defendants as set follows:

    a.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representative and Plaintiff's attorneys as Class Counsel;

    b.  For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

    c.  For an order finding in favor of Plaintiff and the Class on all counts asserted

herein;

d.   For compensatory, consequential, liquidated, statutory, punitive, and exemplary damages, as applicable, in amounts to be determined by the Court and/or the jury;

e.   For prejudgment interest on all amounts awarded;

f.   For post-judgment interest on all amounts awarded;

g.   For an order of restitution and all other forms of equitable monetary relief;

h.   For injunctive relief as pleaded or as the Court may deem just, proper, and equitable;

i.   For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs incurred in bringing this lawsuit; and

j.   For such other, further, and different relief which this Court may find just, proper, and equitable.

**RESPECTFULLY SUBMITTED AND DATED:** December 9, 2020.

**LAW OFFICE OF JARRED S. FREEMAN L.L.C.**

*/s/ Jarred S. Freeman*
Jarred S. Freeman, Esq.
*Attorneys for Plaintiff and Proposed Class*
LAW OFFICE OF JARRED S. FREEMAN L.L.C.
3480 Park Ave., Suite 202 A
Edison, NJ 08820
Telephone: (732) 494-7900
Facsimile: (732) 494-7904
Email: jarred.freemanlaw@gmail.com

**COBURN & GREENBAUM, PLLC**


*/s/ Jonathan Greenbaum____*
Jonathan Greenbaum, Esq.
Panida Pollawit, Esq.
*Attorneys for Plaintiff and Proposed Class*
*Pro Hac Vice Application to be Filed*
COBURN & GREENBAUM, PLLC
1710 Rhode Island Avenue, NW
Washington, DC  20036
Telephone: (202) 470-1689
Facsimile: (866) 561-9712
Email: jg@coburngreenbaum.com
          panida@coburngreenbaum.com


**RICHMAN LAW FIRM PLLC**


*/s/ Scott B. Richman*
Scott B. Richman, Esq.
*Attorneys for Plaintiff and Proposed Class*
*Pro Hac Vice Application to be Filed*
535 Fifth Avenue, 25th Floor
New York, New York 10017
Telephone: (646) 854-3547
Fascimile: (646) 693-6578
Email: srichman@richman-law-firm.com