**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICARDO SANTIAGO, VAUGHN FREDERICK, on their own behalf and on behalf of those similarly situated, | Civil Action No: 20-18581(SDW)(LDW) |
| Plaintiffs, | **OPINION** |
| v. | |
| TOTAL LIFE CHANGES LLC and "JOHN DOES 1-5", fictitious name used to identify presently unknown entities, | November 2, 2021 |
| Defendants. | |

**WIGENTON**, District Judge.

Before this Court is Defendant Total Life Changes, LLC's ("Defendant") Motion to Dismiss Plaintiffs Ricardo Santiago ("Santiago") and Vaughn Frederick's ("Frederick") (collectively, "Plaintiffs") putative class action Amended Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and (6) and 9. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's motion is **GRANTED in part and DENIED in part**.

I.      **BACKGROUND AND PROCEDURAL HISTORY**[1]

At some point in 2020, Plaintiffs each purchased "IASO TEA INSTANT with Broad-Spectrum Hemp Extract 0.0% THC" ("the Product") manufactured by Defendant. (D.E. 27 ¶¶ 22-26, 32-35, 45-48.)[2] Defendant is a "multi-level marketing company" which "sells its products directly through its website, through third-party distributors . . . and through its representatives" known as "life changers." (*Id.* ¶¶ 20-21.) Santiago purchased the Product directly from one of Defendant's "life changers," via her page on Defendant's website. (*Id.* ¶¶ 32-33.) Frederick purchased the Product "off of [Defendant's] website." (*Id.* ¶ 48.) The Product's packaging claimed that the Product contained no THC, a cannabinoid which is the chemical responsible for most of marijuana's intoxicating effects. (*Id.* ¶¶ 24-28.) Santiago purchased the Product to "improve his overall health and wellness" and was apparently satisfied with its effect, even recommending the Product to his parole officer. (*Id.* ¶¶ 32, 38.) Frederick intended to use the Product as an "appetite suppressant" and after an initial purchase, bought the Product several more times. (*Id.* ¶¶ 45, 48.) Both men were subject to routine drug testing – Santiago as a parolee and Frederick as a New Jersey Transit ("NJT") bus operator – and, therefore, desired to purchase a

---

[1] Because the putative class has not yet been certified, this action is "one between [the named plaintiffs] and the defendant[]" and must be evaluated as to each named plaintiff. *Rolo v. City Inv. Co. Liquidating Tr.*, 155 F.3d 644, 659 (3d Cir. 1998).

[2] The precise dates on which Santiago purchased the Product are not identified, but the Complaint alleges that Frederick first bought the Product on or about January 19, 2020 while Santiago purchased it later that same year. Defendant contends that Frederick "could not have purchased the Product" in January "because the Product had not yet been released and was not available for sale at that time" and has filed a declaration from a TLC employee in support of that point. (*See* D.E. 35-2.) Defendant contends that Frederick initially purchased a different tea product with packaging that indicated that the tea "may contain trace amounts of naturally occurring" THC which were unlikely to be detected by drug screens, and that recommended that purchasers check with their employer or drug screening company before ingesting the tea. (*Id.* ¶¶ 8-11.) Consideration of that declaration, however, is inappropriate at this time. *See In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (noting that generally a court may only consider the contents of the complaint on a 12(b)(6) motion to dismiss). The declaration raises questions of fact best resolved at summary judgment after discovery is completed and is beyond the scope of this Court's review at this stage of the proceedings.

2

product that did not contain THC.  (*Id.* ¶¶ 34, 46-47.)    However, both men, after ingesting the Product, tested positive for THC, an outcome they claim can only be attributed to the Product.  (*Id.* ¶¶ 36-37, 48-52.)  To confirm their suspicions, both plaintiffs sent samples of the Product to labs for independent testing, the results of which indicated that the Product contained small, but measurable, amounts of THC.  (*Id.* ¶¶ 39-43, 55-58.)

Upon Santiago's positive test, he was "given a period of time to confirm his suspicions [about the Product] without penalty."  (*Id.* ¶ 38.)  After he gave the lab test results to his parole officer, Santiago was informed that his "positive test for THC would not be considered a violation of his parole."  (*Id.* ¶ 41.)  After Frederick failed his drug test, he claims he sustained "significant monetary and compensatory damages" and "has been unemployed since he was terminated from his" position with the NJT.  (*Id.* ¶¶ 51-52, 59.)  Frederick does not, however, specifically plead that he was fired because of his negative drug test.  Both Plaintiffs also plead that they suffered economic harm because they paid a premium for a product that did not conform to Defendant's warranties.  (*See Id.* ¶¶ 70, 81, 90, 98, 107, 114.)

On December 9, 2020, Santiago filed an eight-count Complaint against Defendant.  (D.E. 1.)  On February 1, 2021, Santiago mailed notice of the alleged defects in the Product to Defendant.  (D.E 27 ¶ 44.)  On or about April 16, 2021, Frederick also mailed notice of the alleged defect to Defendant.  (*Id.* ¶ 60.)  An Amended Complaint was then filed on June 4, 2021, adding Frederick as a Plaintiff and asserting claims for: 1) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, (Counts One and Two); 2) breach of express warranty (Count Three); 3) breach of implied warranty of merchantability (Count Four); 4) breach of implied warranty of fitness for a particular purpose (Count Five); 5) unjust enrichment (Count Six); 6) deceptive trade practices pursuant to the New Jersey Consumer Fraud Act ("NJCFA"),

N.J.S.A. 56:8-1, *et seq.*, (Count Seven); 7) negligent misrepresentation (Count Eight); and 8) Fraud (Count Nine). (D.E. 27 at 17-29.) Defendant subsequently moved to dismiss, and all briefs were timely filed. (D.E. 35, 37, 38.)[3]

## II.   LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts

---

[3] Although Plaintiffs' opposition brief was timely filed, it does not conform to the requirements of Local Civil Rule 7.2. Plaintiffs are cautioned to comply with all court rules in future filings or risk sanctions.

do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs "alleging fraud must state the circumstances of the alleged fraud[ulent act] with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Park v. M & T Bank Corp.,* Civ. No. 09–02921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010) (citing *Lum v. Bank of Am.,* 361 F.3d 217, 223–24 (3d Cir. 2004)).

### III. DISCUSSION

A. Standing

Article III of the United States Constitution limits the power of the federal judiciary to the adjudication of actual "cases" or "controversies." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969); *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). In order to enforce the "case" or "controversy" requirement, Article III requires that a litigant "have 'standing' to invoke the power of a federal court . . . ." *Allen v. Wright*, 468 U.S. 737, 750 (1984). Standing, therefore, is a "threshold question." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). A plaintiff has standing to sue if:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before

5

>   the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations, alterations, and citations omitted); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Although all three elements must be met, "the injury-in-fact element is often determinative." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009), *see also Spokeo*, 136 S. Ct. at 1547 (describing "injury-in-fact" as the "first and foremost" of the three elements). The alleged injury "must be 'particularized' such that it affects the plaintiff in a 'personal and individual way'." *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, Civ. No. 17-4600, 2018 WL 1420496, at *8 (D.N.J. Mar. 22, 2018) (citing *Lujan*, 504 U.S. at 560 n.1). This means that, "[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991) (citations omitted). This inquiry "does not change in the context of a putative class action . . . [S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action.'" *Koronthaly v. L'Oreal USA, Inc.*, Civ. No. 07-5588, 2008 WL 2938045, at * 4 (D.N.J. July 29, 2008), *aff'd*, 374 F. App'x 257 (3d Cir. 2010) (quoting *In re Franklin Mut. Funds Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005)). "[A] plaintiff in a class action must show that she has personally been injured; indeed, the class plaintiff cannot rely on 'injuries suffered by other, unidentified members of the class.'" *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

Here, Defendant argues that Plaintiffs' suit must be dismissed pursuant to Rule 12(b)(1) because Plaintiffs fail to plead that they suffered an injury caused by their purchase and use of the Product. Although this Court agrees that neither Santiago nor Frederick have shown that their

6

consumption of the Product injured them by way of bodily harm or negative drug tests,[4] they have sufficiently pled that they suffered economic harm.  "Monetary harm is a classic form of injury-in-fact." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005) (stating that "[i]njury-in-fact is not Mount Everest" and requires only that a plaintiff "allege some specific identifiable trifle' of injury") (internal citation omitted).  Plaintiffs claim that they purchased the Product after relying on Defendant's misrepresentations and would not have purchased the Product but for those misrepresentations.  Their "alleged economic loss in connection with [those purchases] is both particularized and actual: it claims harm to [Plaintiffs] . . . and regards a real, non-hypothetical transaction.  The alleged loss suffices to constitute injury-in-fact." *Hodges v. Vitamin Shoppe, Inc.*, Civ. No. 13-3381, 2014 WL 200270, at *2 (D.N.J. Jan. 15, 2014.)

 B. <u>Sufficiency of the Claims</u>

  a. <u>Express Warranty (Count Three)</u>

Under New Jersey law, a party seeking to state a claim for express warranty must allege: "(1) that [d]efendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Francis E. Parker Mem. Home, Inc. v. Georgia-Pacific LLC*, 945 F. Supp. 2d 543, 568 (D.N.J. 2013).  New

---

[4] As to Santiago, the facts as pled show only that he consumed the Product and subsequently tested positive for THC. (D.E. 27 ¶¶ 34-37.)  Santiago's position that the Product caused him to fail a required drug test is not enough to show an injury because Santiago suffered no negative consequences of that failed test because he was never found to be in violation of his parole. (*Id.* ¶ 41 (conceding that Santiago's parole officer "indicated that [his] positive test for THC would not be considered a violation of his parole").)  Indeed, the original Complaint alleged that his failed drug test could not have established a basis for a parole violation because "the THC content in [Santiago's] urine sample did not meet the standard for it to be correlated to Plaintiff having swallowed or inhaled THC." (D.E. 1 ¶ 34.)  As to Frederick, although the Complaint alleges that Frederick failed a drug test required for his continued employment with the NJT, it does not clearly plead that Frederick was fired because of that failed test.  Rather, the Complaint suggests the two events were connected without explicitly saying so. (*See* D.E. 27 ¶¶ 47-52, 59.)

7

Jersey law also requires a plaintiff to give pre-litigation notice of warranty claims, such that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.J. Stat. Ann. § 12A:2-607(3)(a); *see also Hammer v. Vital Pharms., Inc.*, Civ. No. 11-4124, 2012 WL 1018842, at *10 (D.N.J. Mar. 26, 2012) (stating "this statutory notice is a condition precedent to filing any suit for breach of warranty") (internal citations omitted); *Palmieri v. Intervet, Inc.*, Civ. No. 19-22024, 2021 WL 2205854, at *9 (D.N.J. June 1, 2021).

Here, Defendant was not given pre-suit notice prior to filing the original Complaint. Santiago sued on December 9, 2020, but it was not until February 1, 2021 that he mailed notice of the alleged defects in the Product to Defendant. (D.E 27 ¶ 44.) As a result, Santiago's express warranty claim will be dismissed.[5] Frederick, however, notified Defendant of the Product's alleged defect on April 16, 2021, approximately six weeks before he joined the suit as a named-plaintiff and before the Amended Complaint was filed. Therefore, Frederick's express warranty claim complied with the requirements of N.J. Stat. Ann. § 12A:2-607(3)(a) and may not be dismissed on notice grounds. In addition, Frederick's express warranty claim may proceed because it is sufficiently pled. The Amended Complaint alleges that the Product's packaging contained affirmative representations that the Product did not contain THC, that Frederick purchased the Product because of those representations, and that the Product did not conform to

---

[5] This Court is unpersuaded by Plaintiffs' attempt to characterize Defendant as a remote seller/manufacturer to whom pre-suit notice is not required. (*See* D.E. 37 at 22-24 (citing *In re Subaru Battery Drain Prods. Liab. Litig.*, Civ. No. 20-3095, 2021 WL 1207791, at *10 (D.N.J. Marc. 31, 2021 (recognizing the New Jersey law does not require pre-suit notice to a remote seller).) Here, Plaintiffs allege that they purchased the Product directly from Defendant's website (Frederick) and through Defendant's website by means of a link provided by one of Defendant's "life changers." (D.E. 27 ¶¶ 27, 32-33, 48.) As such, Defendant here is a direct seller to whom pre-suit notice is owed.

those representations because it actually contains THC.  (*Id.* ¶¶ 45-52.)  Therefore, Defendant's motion to dismiss as to Frederik's express warranty claim will be denied.

        b.    <u>Implied Warranty (Counts Four and Five)</u>

Pre-suit notice is also required for claims for breach of implied warranties.  *See Hammer*, 2012 WL 1018842 at *10 (finding that "statutory notice [pursuant to N.J. Stat. Ann. § 12A:2-607(3)(a)] is a condition precedent to filing any suit for breach of warranty") (internal citations omitted); *see also Palmieri*, 2021 WL 22058454 at *9-10.  Therefore, Santiago's claims for breach of implied warranty must be dismissed for failure to provide appropriate notice.  Frederick's claims are not subject to dismissal on that basis.

The implied warranties of merchantability and fitness for a particular purpose "protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose."  *Crozier v. Johnson & Johnson Consumer Companies, Inc.*, 901 F. Supp. 2d 494, 509 (D.N.J. 2012); *see also Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992).  "In order to establish a breach of either warranty, plaintiffs 'must show that the [product] they purchased from defendant was defective.'"  *Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 612 (D.N.J. 2013).  To that end, establishing either breach "requires a showing regarding the product's functionality, not the advertisements that allegedly induced a customer to purchase it." *Crozier*, 901 F. Supp. 2d at 509.  Here, Frederick sought to purchase a detox tea to aid in appetite suppression. He does not allege that the Product failed to work as a detoxifying agent or failed to suppress his appetite.  Indeed, Frederick purchased the Product multiple times, suggesting just the opposite.  His only allegation is that the Product contained an ingredient that it was advertised not to contain.  This is insufficient, and Frederick's implied warranty claims will be dismissed.

9

      c.  <u>Magnuson-Moss Warranty Act (Counts One and Two)</u>[6]

The MMWA "provides a private right of action in federal court for consumers who are 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, [or] implied warranty.'" *Trexler v. Dodge City, Inc.*, Civ. No. 20-6983, 2021 WL 754004, at *5 (D.N.J. Feb. 26, 2021) (citing 15 U.S.C. § 2310(d)(1)). As a result, "[c]laims under the MMWA depend upon the disposition of the underlying state law warranty claims." *DeFillippo v. Whirlpool Corp.*, Civ. No. 18-1252, 2019 WL 4127162, at *14 (D.N.J. Aug. 30, 2019). Therefore, to state a claim under the MMWA, a plaintiff must first adequately plead a claim for breach of warranty under state law. *Cooper v. Samsung Elecs. Am., Inc.*, Civ. No. 07-3853, 2008 WL 4513924, at *6 (D.N.J. Sep. 30, 2008) (dismissing MMWA claim where state law warranty claim had already been dismissed, noting that MMWA claims are "dependent on state law claims"). Because Santiago's state law warranty claims fail, so too must his MMWA claims. Frederick's MMWA implied warranty claims similarly must also be dismissed, however, his MMWA express warranty claim may proceed. *See Argabright v. Reheem Mfg. Co.*, 201 F. Supp. 3d 578, 600 (D.N.J. 2016) (permitting plaintiffs' MMWA claim to proceed where plaintiffs had stated a viable state law breach of warranty claim).

      d.  <u>Unjust Enrichment (Count Six)</u>

Unjust enrichment is an equitable cause of action that imposes liability when a defendant received a benefit and "retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994); *see also Gov't Employees Ins. Co. v. Adams*

---

[6] Because Plaintiffs bring suit on behalf of themselves and others similarly situated, they are not required under the MMWA to provide Defendant with pre-litigation notice and an opportunity to cure the alleged breach of warranty. *See, e.g.*, *In Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, MDL-1703, 2012 WL 1015806, at *5 (N.D. Ill. Mar. 22, 2012) (recognizing that the MMWA allows class actions to be brought without prior notice). This is a separate issue from the pre-suit notice for Plaintiffs' underlying state law claims as discussed above.

*Chiropractic Ctr. P.C.*, Civ. No. 19-20633, 2020 WL 881514, at *4 (D.N.J. Feb. 24, 2020). "To state a claim for unjust enrichment under New Jersey law, a plaintiff must allege that '(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it.'" *Gov't Employees Ins. Co. v. Ningning He, M.D.*, Civ. No. 19-9465, 2019 WL 5558868, at *6 (D.N.J. Oct. 29, 2019) (citing *Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 711 (D.N.J. 2011)). "However, [r]estitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law.'" *Zamfirova v. AMAG Pharm., Inc.*, Civ. No. 20-152, 2021 WL 2103287 (D.N.J. May 25, 2021) (citing *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 505 (D.N.J. 2006) (internal citations omitted)). Here, Plaintiffs' unjust enrichment claims are identical to their claims for breach of warranty, and having an adequate remedy at law, their unjust enrichment claims must be dismissed.

e. <u>NJCFA & Common Law Fraud (Counts Seven and Nine)</u>

To bring a claim for common law fraud under New Jersey law, a party must show: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Citizens United Reciprocal Exch. v. Meer*, 321 F. Supp. 3d 479, 489 (D.N.J. 2018) (internal citations omitted); *see also Verify Smart Corp. v. Bank of Am., N.A.*, Civ. No. 17-4248, 2021 WL 2549335, at *12 (D.N.J. June 17, 2021). To bring a successful claim under the NJCFA, a plaintiff must show: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Majdipour v. Jaguar Land Rover N. Am., LLC*, Civ. No. 12-7829, 2013 WL 5574626, at *7 (D.N.J. Oct. 9, 2013) (citing *Bosland v. Warnock Dodge, Inc.*, 964

11

A.2d 741, 749 (N.J. 2009)). Both claims are subject to heightened pleading, which requires Plaintiffs to identify specific actions taken by Defendant, when and where those actions were taken, and the identity and role of individual actors participating in the allegedly fraudulent scheme. *See, e.g.*, *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, Civ. No. 08-1057, 2008 WL 5381227, at *5 (D.N.J. Aug. 29, 2018); *Riachi v. Prometheus Grp.*, Civ. No. 17-811, 2017 WL 2438838, at *3 (D.N.J. June 6, 2017) (noting that Rule 9(b)'s particularity requirement demands that plaintiffs "plead 'the who, what, when, where, and how: the first paragraph of any newspaper story'") (citing *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)); *see also* FED. R. CIV. P. 9(b).

Plaintiffs' Complaint does not provide this level of specificity. Plaintiffs make generalized, conclusory allegations of fraudulent practices, alleging that Defendant "intended for consumers" to rely on "deceptive" acts, (*see* D.E. 27 ¶¶ 116-22, 129-35), but do not indicate what specific actions were taken, when they were taken, or where they occurred. More is required when raising fraud claims, therefore, Defendant's motion to dismiss as to Counts Seven and Nine will be granted.

    f.   <u>Negligent Misrepresentation (Count Eight)</u>

To successfully assert a claim of negligent misrepresentation, a plaintiff must show that defendant "negligently made an incorrect statement, upon which [plaintiff] justifiably relied." *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 457 (D.N.J. 2015); *see also Green v. Morgan Prop.*, 73 A.3d 478 (N.J. 2013). However, negligent misrepresentation claims sound in tort, and are prohibited where a plaintiff seeks to recover solely economic damages, absent some physical injury. *See, e.g.*, *Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264, 267-68 (N.J. 1997); *AgroLabs, Inc. v. Innovative Molding, Inc.*, Civ. No. 13-6169, 2014 WL 3535560, at *3 (D.N.J.

July 16, 2014) (recognizing that "[t]he economic loss doctrine prohibits a commercial product purchaser from seeking purely economic damages through a negligence claim"). Here, Plaintiffs do not allege any physical injury and seek to recover only money damages. (*See* D.E. 27 at 29-30.) Therefore, Count Eight will be dismissed.

### IV.     CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Plaintiffs shall have thirty (30) days within which to file a Second Amended Complaint. An appropriate order follows.

    /s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:      Clerk
cc:        Leda D. Wettre, U.S.M.J.
           Parties