**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICARDO SANTIAGO, VAUGHN FREDERICK, on their own behalf and on behalf of those similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>TOTAL LIFE CHANGES LLC and "JOHN DOES 1-5", fictitious name used to identify presently unknown entities,<br><br>　　　　　　　Defendants. | Civil Action No: 20-18581(SDW)(LDW)<br><br>**OPINION**<br><br>July 7, 2022 |

**WIGENTON**, District Judge.

Before this Court is Defendant Total Life Changes, LLC's ("Defendant") Partial Motion to Dismiss certain counts of Plaintiffs Ricardo Santiago ("Santiago") and Vaughn Frederick's ("Frederick") (collectively, "Plaintiffs") putative class action Second Amended Complaint, ("SAC"), (D.E. 42), pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) and 9(b), and Defendant's Motion to Strike the class allegations from the SAC, pursuant to Rules 12(f) and 23. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1332, and 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's motion is **GRANTED in part and DENIED in part**.

1

I.      BACKGROUND AND PROCEDURAL HISTORY[1]

In September 2020,[2] Santiago purchased "IASO TEA INSTANT with Broad-Spectrum Hemp Extract 0.0% THC" manufactured by Defendant ("the Product"), (D.E. 42 ¶ 48), and in April 2020, July 2020, and January 2021, Frederick purchased the Product, (*id.* at ¶ 66). Defendant is a "multi-level marketing company" that "sells its products directly through its website, through third-party distributors . . . , and through its representatives" known as "Life Changers." (*Id.* ¶¶ 33–34.) Santiago purchased the Product directly from one of Defendant's "Life Changers," via her page on Defendant's website. (*Id.* ¶¶ 47–48.) Frederick purchased the Product from [Defendant's] website twice, and then bought it from a "Life Changer" once. (*Id.* ¶ 66.) The Product's packaging claimed that the Product contained no THC, a cannabinoid in marijuana. (*Id.* ¶¶ 26–27, 37–40, 58, 65, 69–70.) Santiago purchased the Product to "improve his overall health and wellness" and was apparently satisfied with its effect, even recommending the Product to his parole officer. (*Id.* ¶¶ 47, 53.) Frederick intended to use the Product as an "appetite suppressant" and after an initial purchase, bought the Product twice more. (*Id.* ¶¶ 62, 66.)

Plaintiffs were each subject to routine drug testing—Santiago as a parolee and Frederick as a New Jersey Transit ("NJT") bus operator—and, therefore, desired to purchase a product that did not contain THC. (*Id.* ¶¶ 49, 51–52, 61, 63–64, 67, 69.) After ingesting the Product, however, Plaintiffs each tested positive for THC, an outcome they assert can only be attributed to the Product. (*Id.* ¶¶ 51–52, 57–58, 67, 69–70.) To confirm their suspicions, Plaintiffs each sent

---

[1] Because the putative class has not yet been certified, this action is "one between [the named plaintiffs] and the defendant[]" and must be evaluated as to each named plaintiff. *Rolo v. City Inv. Co. Liquidating Tr.*, 155 F.3d 644, 659 (3d Cir. 1998).

[2] The SAC lists the purchase date as "on or about September 17, 2021." (D.E. 42 ¶ 48.) The year "2021" appears to be a typographical error since the subsequent drug testing occurred in October 2020. (*Id.* ¶¶ 51, 54, 56.)

2

samples of the Product to laboratories for independent testing, the results of which indicated that the Product contained small, but measurable, amounts of THC. (*Id.* ¶¶ 54–55, 57–59, 70.)

Upon Santiago's positive test, he was "given a period of time to confirm his suspicions [about the Product] without penalty." (*Id.* ¶ 53.) After he gave the lab test results to his parole officer, Santiago was informed that his "positive test for THC would not be considered a violation of his parole . . . ." (*Id.* ¶ 56–57.) He claims, however, that he "sustain[ed] significant emotional distress" because of the failed drug test. (*Id.* ¶ 52.) After Frederick failed the drug test, he "lost his job as a NJT bus operator, which included, upon information and belief, his salary, overtime, pension, health insurance, and bonuses." (*Id.* ¶ 68.) Frederick does not, however, specifically plead that he was fired because of his failed drug test. (*Id.*) Plaintiffs also allege that they suffered economic harm because they paid a premium for a product that did not conform to Defendant's warranties. (*See Id.* ¶¶ 29, 32, 78–84, 90–94, 98–101, 107–12.)

On December 9, 2020, Santiago filed an eight-count Complaint against Defendant. (D.E. 1.) Sometime after testing the Product, Santiago mailed notice of the alleged defects in the Product to Defendant.[3] (D.E. 42 ¶ 60.) In or around April 2021, Frederick also mailed notice of the alleged defect to Defendant. (*Id*. ¶ 70–71.) An Amended Complaint was then filed on June 4, 2021, adding Frederick as a Plaintiff and asserting claims for:  1) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*, (Counts One and Two); 2) breach of express warranty (Count Three); 3) breach of implied warranty of merchantability (Count Four); 4) breach of implied warranty of fitness for a particular purpose (Count Five); 5) unjust enrichment (Count Six); 6) deceptive trade practices pursuant to the New Jersey Consumer Fraud Act ("NJCFA"),

---

[3] The First Amended Complaint ("FAC") noted that Santiago mailed notice concerning the alleged defect to Defendant on or about February 1, 2021. (D.E. 27 ¶ 44.) That date has been omitted from the SAC. (D.E. 42 ¶ 60.) This Court addresses the omission in the discussion below. *See infra*, Part III, Section A(1).

N.J. Stat. Ann. §§ 56:8-1, *et seq.*, (Count Seven); 7) negligent misrepresentation (Count Eight); and 8) fraud (Count Nine). (D.E. 27 at 17–29.) Defendant subsequently moved to dismiss, and the parties submitted briefs. (D.E. 35, 37–38.) This Court issued an opinion on November 2, 2021 in which it dismissed all Counts as to Santiago, and Counts Two, Four, Five, Six, Seven, Eight, and Nine as to Frederick. (D.E. 40.) This Court permitted Frederick's MMWA claim (Count One) and express warranty claim (Count Three) to proceed. (*Id.*)

On December 2, 2021, Plaintiffs filed an SAC asserting claims for: 1) violation of the MMWA, 15 U.S.C. §§ 2301 *et seq.*, (Count One); 2) breach of express warranty, N.J. Stat. Ann. § 12A:2-313, (Count Two); 3) unjust enrichment, (Count Three); and 4) deceptive trade practices pursuant to the NJFCA, N.J. Stat. Ann. § 56:8-2, (Count Four). (D.E. 42.) Defendant thereafter filed the instant Partial Motion to Dismiss, and the parties submitted timely briefing. (D.E. 44, 45, 46.)

## II.     LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, 235–36 (3d ed. 2004)); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief" (quoting *Twombly*, 550 U.S. at 555)).

When considering a Motion to Dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine

4

whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–11 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] . . . that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Plaintiffs "alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Park v. M & T Bank Corp.,* No. 09-02921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010) (alteration in original) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

Rule 12(f) permits a court to strike portions of pleadings that are "redundant," "immaterial," "impertinent," or "scandalous." The court may strike portions of pleadings "on its own," FED. R. CIV. P. 12(f)(1), or "on motion made by a party," FED. R. CIV. P. 12(f)(2). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid

5

unnecessary forays into immaterial matters." *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 WL 4473228, at * 3 (E.D. Pa. Sept. 28, 2012) (quoting *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F.Supp.2d 393, 402 (E.D. Pa. 2002)).

Rule 23(c)(1)(a) requires a court to determine whether to certify a claim as a class action "[a]t an early practicable time after a person sues or is sued as a class representative." In deciding whether to certify a class under [Rule 23], [a court] must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008). "Rule 23 'does not set forth a mere pleading standard,'" *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 483 (3d Cir. 2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, (2011)), but rather "calls for [a court to perform] a rigorous analysis in which '[f]actual determinations supporting Rule 23 findings must be made by a preponderance of the evidence,'" *id.* at 483–84 (second alteration in original) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 307).

### III.   DISCUSSION

Defendant seeks to dismiss Santiago's MMWA claim (Count One), Plaintiffs' unjust enrichment claim (Count Three), and Plaintiffs' NJCFA claims (Count Four). Defendant also requests that this Court strike Plaintiffs' class action allegations. Each request will be addressed in turn.

#### A. Sufficiency of the Claims

##### 1. Magnuson-Moss Warranty Act (Count One)

The MMWA "provides a private right of action in federal court for consumers who are 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, [or] implied warranty.'" *Trexler v. Dodge City, Inc.*, No.

6

20-6983, 2021 WL 754004, at *5 (D.N.J. Feb. 26, 2021) (alterations in original) (quoting 15 U.S.C. § 2310(d)(1)). As a result, "[c]laims under the MMWA depend upon the disposition of the underlying state law warranty claims." *DeFillippo v. Whirlpool Corp.*, No. 18-1252, 2019 WL 4127162, at *14 (D.N.J. Aug. 30, 2019). Therefore, to state a claim under the MMWA, a plaintiff must first adequately plead a claim for breach of warranty under state law. *Cooper v. Samsung Elecs. Am., Inc.*, No. 07-3853, 2008 WL 4513924, at *6 (D.N.J. Sept. 30, 2008) (dismissing MMWA claim where state law warranty claim had already been dismissed and noting that MMWA claims are "dependent on state law claims").

As discussed in this Court's previous opinion, (D.E. 40), Santiago's individual state law warranty claims fail; therefore, so too must his *individual* MMWA claims.[4] This Court notes that the FAC included that Santiago mailed notice about the alleged defect to Defendant "on or about February 1, 2021," (D.E. 27 ¶ 44), yet the notice date has been left out of the SAC, (D.E. 42 ¶ 60). It is unclear whether Plaintiffs intended to make such an alteration to obfuscate the importance of the delinquent notice, or whether doing so was a genuine oversight. Regardless, this Court has already held that the notice Santiago provided was untimely and could therefore not sustain an individual state-law claim. (D.E. 40 at 7–10.) Consequently, Santiago's individual MMWA claim remains dismissed and cannot be resurrected.[5] Frederick's MMWA express warranty claim may

---

[4] Because Plaintiffs bring suit on behalf of themselves and others similarly situated, *the class* is not required under the MMWA to provide Defendant with pre-litigation notice and an opportunity to cure the alleged breach of warranty. *See, e.g.*, *In Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, MDL-1703, 2012 WL 1015806, at *5 (N.D. Ill. Mar. 22, 2012) (recognizing that the MMWA allows class actions to be brought without prior notice). This consideration is a separate issue from the pre-suit notice required for Plaintiffs' *individual* underlying state law claims, as discussed in this Court's previous opinion. (*See* D.E. 40 at 7–10.) Individual claims "must comply with the pre-filing opportunity to cure requirement." *Id.*

[5] As discussed *supra* note 4, Santiago may yet realize an MMWA claim as a class member, should a class be certified. He cannot, however, sustain an individual claim due to lack of timely notice, as discussed above.

7

proceed, as noted in this Court's prior decision.  (*See* D.E. 40 at 7–10 (*citing Argabright v. Reheem Mfg. Co.*, 201 F. Supp. 3d 578, 600 (D.N.J. Aug. 16, 2016) (permitting plaintiffs' MMWA claim to proceed where plaintiffs had stated a viable state law breach of warranty claim)).)

2. Unjust Enrichment (Count Three)

Unjust enrichment is an equitable cause of action that imposes liability when a defendant received a benefit and "retention of that benefit without payment would be unjust."  *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (citations omitted); *see also Gov't Emps. Ins. Co. v. Adams Chiropractic Ctr. P.C.*, No. 19-20633, 2020 WL 881514, at *4 (D.N.J. Feb. 24, 2020) (citation omitted).  "To state a claim for unjust enrichment under New Jersey law, a plaintiff must allege that '(1) at plaintiffs' expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it.'"  *Gov't Emps. Ins. Co. v. Ningning He, M.D.*, No. 19-9465, 2019 WL 5558868, at *6 (D.N.J. Oct. 29, 2019) (quoting *Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 711 (D.N.J. May 26, 2011)).  "However, '[r]estitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law.'"  *Zamfirova v. AMAG Pharm., Inc.*, No. 20-152, 2021 WL 2103287, at * (D.N.J. May 25, 2021) (quoting *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 505 (D.N.J. Nov. 16, 2006)).

This Court already dismissed Plaintiffs' unjust enrichment claims, noting that the claims were identical to their claims for breach of warranty, and that Plaintiffs had an adequate remedy at law and, therefore, the unjust enrichment claim must be dismissed.  (*See* D.E. 40 at 13–14.)  Plaintiffs argue that they may reassert the already dismissed unjust enrichment claim and plead in the alternative to the already dismissed breach of warranty claim.  (*See* D.E. 45 at 10–11.)  This Court has already addressed the feasibility of the unjust enrichment claim and will not breathe new

life into the claim, as the SAC does not provide additional, compelling information capable of reviving it. (*See* D.E. 40 at 10–11. *See generally* D.E. 42.) Plaintiffs' unjust enrichment claim (Count Three), therefore, remains dismissed.

3. <u>Deceptive Trade Practices—NJCFA, N.J. Stat. Ann. § 56:8-2 (Count Four)</u>

To bring a successful claim under the NJCFA, a plaintiff must show: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-7829, 2013 WL 5574626, at *7 (D.N.J. Oct. 9, 2013) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)). NJCFA claims are subject to the heightened pleading requirements of Rule 9(b), which requires a plaintiff to identify specific actions taken by a defendant, when and where those actions were taken, and the identity and role of individual actors participating in the allegedly fraudulent scheme. *See, e.g.*, *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 08-1057, 2008 WL 5381227, at *5 (D.N.J. Aug. 29, 2018); *Riachi v. Prometheus Grp.*, No. 17-811, 2017 WL 2438838, at *3 (D.N.J. June 6, 2017); *see also* FED. R. CIV. P. 9(b). Rule 9(b)'s particularity requirement demands that plaintiffs "plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'" *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

As with Plaintiffs' FAC, the SAC does not provide sufficient specificity to comport with Rule 9(b)'s heightened pleading standard. Plaintiffs continue to make generalized, conclusory allegations of fraudulent practices, alleging that Defendant "engaged in deceptive trade practices by marketing, advertising, and promoting its product as containing 0.0% THC, when in fact the product contained greater than 0.0% THC," "engaged in unconscionable commercial practice,

9

deception, misrepresentation of material facts . . . by marketing, advertising, and/or promoting its product as containing 0.0% THC, when in fact the product contained greater than 0.0%THC," "engaged in the knowing, concealment, suppression, or omission of the material fact that the product contained greater than 0.0%THC," "engaged unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that Plaintiffs rely upon such concealment, suppression[,] or omission in purchasing the product." (D.E. 42 ¶¶ 107–08). These allegations do not indicate what specific actions were taken, when they were taken, or where they occurred, and rather echo and repeat allegations like those that were insufficient in the FAC, adding some wording for good measure but falling short of satisfying 9(b)'s heightened pleading standard.[6] (*See* D.E. 42 ¶¶ 116–22). Specificity is required when raising fraud claims, but is absent here. Thus, Defendant's deceptive trade practices claim (Count Four), remains dismissed.

### B. Sufficiency of the Class Allegations

"A defendant may move to strike class action allegations prior to discovery in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Clark v. McDonald's Corp.*, 213 F.R.D 198, 205 n.3 (D.N.J. Mar. 3, 2003). A court "has the authority to strike class allegations at the pleading stage under Fed. R. Civ. P. 12(f)

---

[6] Of note, even had these claims survived the heightened pleading standard, the ascertainable loss would likely have been limited to any demonstrable loss in value from purchasing the product. The SAC states that "the Individual Plaintiffs and other Class Members . . . suffer[ed] an ascertainable loss in the form of monies spent to purchase deceptively labelled merchandise." (D.E. 42 ¶ 110.) Plaintiffs argue that Santiago "suffered emotional distress," which does not translate to ascertainable loss. (D.E. 45 at 18.) Plaintiffs also argue that Frederick "alleged individual damages, as well, including the loss of his job as a bus driver because of the failed drug test." (D.E. 45 at 14.) The SAC, however, does not actually state that Frederick lost his job because of the failed drug test. (D.E. 42 ¶ 68.) While Frederick's loss of job allegedly occurred near in time to the failed drug test, the SAC does not connect the two and does not directly assert that he was terminated *due to* the drug test result. (*Id.*) Thus, Plaintiff's argument is unmoored to the facts included in the SAC. Because the Count is not sufficiently pleaded, however, this point is moot.

if the complaint demonstrates that a class action cannot be maintained." *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 368 (D.N.J. Aug. 26, 2015) (citing *Smith v. Merial, Ltd.*, No. 10-439, 2012 WL 2020361, at *6 (D.N.J. June 5, 2012)). While a court may strike class allegations at the pleading stage, however, it "should typically await the development of a factual record before determining whether the case should move forward on a representative basis." *Richardson v. Dir. Fed. Bureau of Prisons*, 829 F.3d 273, 288–89 (3d Cir. 2016) (citing *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013)).

Here, the record is not adequately developed for this Court to determine whether the matter should proceed on a representative basis. Rule 12(f) provides that this Court may strike class allegations that cannot be maintained, *Mladenov,* 124 F. Supp. at 368, but this Court must also perform a rigorous vetting of the factual record, *Mielo*, 897 F.3d at 483–84. The factual record in this matter is not yet sufficiently developed to perform such a vetting. While Rule 23(c)(1)(a) requires that this Court determine whether class allegations are sufficient "[a]t an early practicable time after a person sues or is sued as a class representative," because the class allegations in the SAC depend on factual information that will likely come to light during discovery, this Court will not strike the allegations at this time and will instead perform a rigorous review if and when this matter proceeds to summary judgment. Defendant's Motion to Strike is therefore denied.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED in part, with prejudice**, and **DENIED in part**. An appropriate order follows.

                                                                /s/ Susan D. Wigenton
                                               **SUSAN D. WIGENTON, U.S.D.J.**

Orig:      Clerk
cc:        Leda D. Wettre, U.S.M.J.
             Parties